J-S41043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALKIOHN DUNKINS | : | |
| | : | |
| Appellant | : | No. 872 EDA 2024 |

Appeal from the PCRA Order Entered March 14, 2023
In the Court of Common Pleas of Northampton County
Criminal Division at No(s):  CP-48-CR-0001577-2017

BEFORE:  MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED JULY 8, 2025**

Alkiohn Dunkins ("Dunkins") appeals from the order dismissing his first, counseled, petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1] Additionally, Dunkins's attorney, John E. Kotsatos ("PCRA counsel") has filed a brief and application to withdraw pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988) and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  We grant the application to withdraw and affirm the dismissal order.

Our Supreme Court set forth the factual and procedural history of this case on direct review, which we reproduce in relevant part as follows:

> At approximately 2:00 a.m. on February 2, 2017, two masked men posed as campus police [officers] to gain entry to the dorm room shared by Greg Farina [("Farina")] and William Reilley [("Reilley")] in the Hassler dormitory building on the

_____

[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

Moravian College Campus in Bethlehem. The men held Farina and Reilley at gunpoint and stole $1,000 and a jar of marijuana from Reilley's footlocker. Reilley reported the robbery to campus officials around 11:00 a.m. and, thereafter, campus police requested that Moravian College's Director of Systems Engineering, Christopher Laird [("Laird")], analyze its WiFi connection records to compile a list of students logged on to the WiFi in the Hassler building at the time of the robbery. Laird discovered only three Moravian College students were logged on to the campus WiFi at that location who did not reside in the Hassler building; two were females and the other was . . . Dunkins.

Campus police relayed this information to Detective James Ruvolo of the Bethlehem Police Department [("Detective Ruvolo")]. In the course of his investigation, Detective Ruvolo interviewed Reilley, [Dunkins], and Colin Zarzecki [("Zarzecki")], another Moravian College student. Reilley told Detective Ruvolo he suspected [Dunkins] participated in the robbery because [Dunkins] previously stole from him by failing to pay for marijuana, while [Dunkins] denied being involved in the robbery and told Detective Ruvolo he had not entered the Hassler building since October 2016. . . . Zarzecki told Detective Ruvolo that on February 3, 2017, the day after the robbery, [Dunkins] bragged to him about money he stole by posing as a campus police officer. Based on the above information, [Dunkins] was arrested and charged with robbery, conspiracy to commit robbery, receiving stolen property, and simple assault.

Prior to trial, [Dunkins] filed a motion to suppress in which he claimed the campus police conducted an illegal search by obtaining the Hassler building WiFi connection records without a warrant. . . ..

* * * *

. . . The trial court denied [Dunkins's] suppression motion[,] and a jury later convicted him of the aforementioned charges. [After the verdict was read aloud, one of Dunkins's attorneys moved to poll the jury; the court granted the motion; thereafter, each juror put his or her name on the record and affirmatively stated they agreed with the verdict.] Thereafter, the trial court denied [Dunkins's] motion for extraordinary relief and sentenced him to an aggregate term of five to ten years' imprisonment.

- 2 -

> Following the denial of his post-sentence motion, [Dunkins] filed a direct appeal in the Superior Court.
>
> In a unanimous, published opinion, . . . the Superior Court affirmed the trial court's denial of suppression.

*Commonwealth v. Dunkins*, 263 A.3d 247, 249–50 (Pa. 2021) (footnotes omitted). In November 2021, the Pennsylvania Supreme Court affirmed Dunkins's judgment of sentence. *See id*. at 255.

In July 2022, Dunkins filed a *pro se* PCRA petition, and the PCRA court thereafter appointed Alfred Stirba IV, Esq. ("Attorney Stirba")] to represent Dunkins. *See* Order, 8/12/22. A counseled amended PCRA petition followed. *See* Amended PCRA Pet., 11/22/22. In the amended petition, Dunkins raised two claims: (1) trial counsel was ineffective for failing to interview, or call at trial, Roland Cash ("Cash"), "an essential fact witness," who, Dunkins alleged, would have testified favorably for him; and (2) appellate counsel was ineffective for failing to raise and litigate a "jury corruption" issue. *Id*. at ¶ 17.[2]

In support of the second claim, Attorney Stirba also filed a motion to unseal a document memorializing a complaint from a juror who served during Dunkins's trial—which was made after the verdict was recorded, and the jury discharged—in which, allegedly, that juror asserted she had felt pressured by

_____

[2] In Dunkins's *pro se* petition, he asserted that Commonwealth witness Zarzecki, who overheard Dunkins's confession, stated that Cash allegedly overheard the confession. *See* PCRA Pet., 7/15/22, ¶ 5(a) (cont'd). The notes of testimony reveal some ambiguity in Zarzecki's testimony about whether Cash, or another individual named "Rollins" also overheard the conversation, and also about whether Rollins and Cash were the same person. *See*, *e.g.*, N.T., 9/5/18, at 135-38, 147.

another juror to convict Dunkins. **See** Mot. to Unseal, 12/14/22, at ¶ 5. The PCRA court denied the motion. **See**, **e.g.**, Order, 1/9/23, at 3 (noting that the document at issue was a memorandum authored by court administration memorializing a complaint by a juror that "there was a heated atmosphere in the jury deliberation room," and that the document was read aloud *in camera* to the Commonwealth and Dunkins's trial counsel).

The PCRA court held an evidentiary hearing at which Dunkins testified and opted not to call Cash to testify or present any evidence related to Cash, apart from Dunkins's testimony in which he baldly asserted that Cash would have testified in his favor that it was "impossible" for Dunkins to have committed the robbery. **See** N.T., 1/27/23, at 7-9. Thereafter, the PCRA court denied Dunkins's amended PCRA petition. **See** Order, 3/14/23. Dunkins timely appealed, and this Court dismissed the appeal for failure to file a docketing statement. **See** Order, No. 1003 EDA 2023, 9/21/23.

Following the receipt of *pro se* correspondence from Dunkins in November 2023, which the PCRA court construed as a subsequent PCRA petition, the court appointed Jennifer Toth, Esq. to represent him. **See** Order, 11/8/23. Attorney Toth subsequently filed a **Turner**/**Finley** "no merit" letter and moved to withdraw. **See** No Merit Letter, 12/29/23; Pet. to Withdraw, 12/29/23. The PCRA court granted Attorney Toth's motion to withdraw, and issued a notice of intent to dismiss Dunkins's PCRA petition pursuant to Pa.R.Crim.P. 907. **See** Notice, 1/10/24. Following a *pro se* objection by Dunkins, **see** Objection, 2/5/24, the PCRA court reinstated *nunc pro tunc*

Dunkins's right to appeal from the March 2023 order dismissing his original petition in light of Attorney Stirba's ineffectiveness for failure to file a docketing statement which deprived Dunkins of appellate review of the dismissal of his first PCRA petition. *See* Order, 2/12/24. By that same order, the PCRA court appointed present PCRA counsel.

Dunkins, *via* PCRA counsel, timely appealed, and PCRA counsel included a Pa.R.A.P. 1925(c)(4) statement of intent to file a **Turner/Finley** brief on appeal, in lieu of a Rule 1925(b) concise statement of errors complained of on appeal. *See* Notice of Appeal, 3/7/24.[3]

Prior to addressing the merits of this appeal, we must first consider Counsel's petition to withdraw. In a PCRA matter, an application to withdraw as counsel must comply with the **Turner/Finley** requirements:

> Counsel petitioning to withdraw from PCRA representation must proceed . . . under **Turner** and **Finley**[,] and must review the case zealously. **Turner/Finley** counsel must then submit a "no-merit" letter to the trial court, or brief on appeal to this Court, detailing the nature and extent of counsel's diligent review of the case, listing the issues which petitioner wants to have reviewed, explaining why and how those issues lack merit, and requesting permission to withdraw.

> Counsel must also send to the petitioner: (1) a copy of the "no[-]merit" letter/brief; (2) a copy of counsel's petition to withdraw; and (3) a statement advising petitioner of the right to proceed *pro se* or by new counsel.

---

[3] The PCRA court directed this Court to the March 14, 2023 opinion and order explaining the reasons for its dismissal of Dunkins's first PCRA petition. *See* PCRA Ct. Statement, 3/11/24.

*Commonwealth v. Doty*, 48 A.3d 451, 454 (Pa. Super. 2012) (citation and brackets omitted). If this Court determines counsel has satisfied these technical requirements, we then conduct our own review of the case and if we agree the claims are without merit, we will permit counsel to withdraw and deny relief. *See id*.

Following the filing of PCRA counsel's *Turner*/*Finley* brief and application to withdraw, Dunkins moved for the appointment of new counsel, which this Court denied. *See* Order, 1/15/25. In that same order, this Court concluded that PCRA counsel complied with the technical requirements of *Turner*/*Finley*. *See id*. at 2 n.3.[4] Accordingly, we proceed to review the merits of Dunkins's intended appellate issues to determine whether they are frivolous.

Dunkins's intended appellate issues, which concern the dismissal of his first PCRA petition, are as follows:

> (1) [Dunkins's] trial court counsel was ineffective for failing to interview or subpoena Roland Cash, an essential fact witness; and
>
> (2) [Dunkins's] appellate counsel was ineffective for failing to raise and litigate the jury corruption issue on direct appeal.

_____

[4] Dunkins, *pro se*, filed an application for a first extension of time in which to file an appellate brief, which this Court granted, *see* Order, 2/27/25, and an untimely second application for an extension of time in which to file an appellate brief, which this Court denied. *See* Order, 5/30/25.

***Turner*/*Finley*** Br. at 23 (unnecessary capitalization omitted);[5] ***accord***

Amended PCRA Pet., 11/22/22, at ¶ 17 (setting forth only these two claims).

Our standard of review of an order dismissing a PCRA petition is well-settled:

> Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

***Commonwealth v. Staton***, 184 A.3d 949, 954 (Pa. 2018) (internal citation and quotations omitted). "Moreover, we must conduct our review in the light most favorable to the prevailing party, in this instance, the Commonwealth." ***Commonwealth v. Rizor***, 304 A.3d 1034, 1058 (Pa. 2023) (internal citation omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." ***Commonwealth v. Wholaver***, 177 A.3d 136, 144–45 (Pa. 2018) (internal citations omitted). Further, "it is well settled that this Court may affirm a valid judgment or order for any reason appearing as of record." ***Id***. at 145 (internal citation omitted).

_____

[5] We observe that at the evidentiary hearing on Dunkins's PCRA petition, despite having an opportunity to address the court, and also giving testimony, Dunkins expressed no dissatisfaction with the issues as framed in the amended petition. ***See generally*** N.T., 1/27/23.

Both of Dunkins's intended issues hinge on assertions of ineffective assistance of counsel. For ineffective assistance of counsel claims, the petitioner bears the burden of demonstrating (1) that the underlying claim is of arguable merit; (2) that counsel had no reasonable basis designed to effectuate the petitioner's interests for the act or omission in question; and (3) that counsel's ineffectiveness actually prejudiced the petitioner. *See Commonwealth v. Moser*, 921 A.2d 526, 531 (Pa. Super. 2007).[6]

The three-prong ineffectiveness test delineated above applies to appellate counsel as well. *See*, *e.g.*, *Commonwealth v. Blakeney*, 108 A.3d 739, 49-50 (Pa. 2014). As for appellate counsel specifically,

> [w]ith regard to "reasonable basis" in the appellate context, it is well settled that appellate counsel is entitled, as a matter of strategy, to forego even meritorious issues in favor of issues he believes pose a greater likelihood of success.

_____

[6] Regarding "arguable merit," this Court has provided that, "[t]he first inquiry in an ineffectiveness claim is always whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim." *Commonwealth v. Lott*, 581 A.2d 612, 614 (Pa. Super. 1990) (internal citation and quotations omitted). For the "reasonable basis" prong, the petitioner must show that counsel "had no reasonable basis designed to effectuate his client's interests." *Id*. (internal citation and quotations omitted). Lastly, to establish prejudice, the petitioner "must show that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction." *Commonwealth v. Brown*, 161 A.3d 960, 965 (Pa. Super. 2017) (internal citation omitted).

*Id*. at 750 (internal citations, quotations, and brackets omitted). Regarding prejudice, the PCRA petitioner must show that "there is a reasonable probability that the outcome of the direct appeal proceeding would have been different but for counsel's deficient performance." *See id*.

In Dunkins's first issue, he argues that trial counsel was ineffective for failing to call Cash as a witness. When raising a claim of ineffectiveness for the failure to call a potential witness, a petitioner satisfies the performance and prejudice requirements by establishing that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Sneed*, 45 A.3d 1096, 1108-09 (Pa. 2012) (internal citations omitted).

Dunkins, in his intended issue, argues trial counsel was ineffective for failing to call Cash because Cash was an "essential fact witness made known to trial counsel prior to trial." Amended PCRA Pet., 11/22/22, at ¶ 17.

The PCRA court considered this issue and concluded it is meritless. The court observed that Dunkins, via counsel, opted not to call anyone to testify at his PCRA evidentiary hearing apart from himself, and Dunkins testified that Cash would testify that it was impossible for Dunkins to have committed the robbery. *See* Order, 3/14/23 (unnumbered at 2-3). The court noted that

while Dunkins alleged he had spoken to Cash two weeks prior to the hearing, he failed to offer evidence in support of his claim.

Following our review, we conclude Dunkins has failed to show the PCRA court erred in determining trial counsel was ineffective for failing to call Cash as a witness. Specifically, Dunkins has not established prejudice; that is, he has asserted, but offered no evidence apart from his own testimony that Cash was available and willing to testify, or any evidence of what the specific substance of Cash's testimony would have been; nor did Dunkins show that the absence of Cash's testimony prejudiced him to the extent that he was denied a fair trial. *See* N.T., 1/27/23, at 6-9 (Dunkins testifying generally that Cash would have testified at trial that it was impossible for Dunkins to have committed the offenses, and that Dunkins had had recent contact with Cash, yet, without explanation, Dunkins failed to procure Cash's attendance at the PCRA evidentiary hearing); *cf*. *Sneed*, 45 A.3d at 1109. Accordingly, this issue is indeed frivolous and merits no relief.

In Dunkins's second intended issue, he maintains appellate counsel was ineffective for failing to raise and litigate the jury corruption issue on direct appeal. This Court has set forth the relevant principles as follows:

> It is a general rule of law that a juror may not impeach the jury's verdict after the jury has been discharged, though an exception to this rule is made in situations where the jury was exposed to an *ex parte* influence which possesses a reasonable likelihood of prejudice. Although they may testify to the existence of an outside influence, jurors are prohibited "from testifying as to the effect which these extra-evidentiary influences had upon the jurors in reaching a decision," just as jurors are prohibited from

recounting the mental processes by which they arrived at their verdict. Additionally, we reiterate, this Court long ago noted that interviewing jurors after a verdict and obtaining from them *ex parte*, unsworn statements in answer to undisclosed questions and representations by the interviewers is highly unethical and improper and was long ago condemned by this [C]ourt.

***Commonwealth v. Miller***, 212 A.3d 1114, 1129 (Pa. Super. 2019) (internal citation omitted). ***Accord*** Pa.R.E. 606(b).

Dunkins asserts that appellate counsel was ineffective for failing to raise the jury corruption issue.

The PCRA court concluded that Dunkins failed to carry his burden. In the opinion and order denying Dunkins's petition, the court explained that "no testimony or other evidence was offered regarding [this] claim for relief . . . with respect to appellate counsel. . . . [Dunkins] has failed to meet his burden of proof on this issue as well." Order, 3/14/23 (unnumbered at 3).

Following our review of this issue, we conclude Dunkins has failed to show the PCRA court abused its discretion or committed an error of law, and that the claim is frivolous. Initially, we note that trial counsel preserved this issue by raising it, *inter alia*, in Dunkins's post-sentence motion. ***See*** Post-Sentence Mot., 1/28/29, at 8-9. The trial court denied relief. Notwithstanding a juror's assertions *in camera* that she and a handful of other jurors felt belittled and "worn down," and accordingly found Dunkins guilty rather than not guilty, the trial court concluded that there were no outside influences on jury deliberations, and, as the jury had already been discharged, it was impermissible for the juror to impeach the verdict. ***See*** Order, 3/1/19, at 7-

- 11 -

9 (discussing, *inter alia*, **Commonwealth v. Williams**, 420 A.2d 727, 729 (Pa. Super. 1980)).

Dunkins's appellate counsel, in the Rule 1925(b) statement, raised an issue related to the notes of testimony from the *in camera* proceedings, asserting therein that the trial court erred in denying a motion to unseal them and erred in denying Dunkins an opportunity to interview the juror. **See** 1925(b) statement, 3/28/19, at ¶ 5. However, appellate counsel apparently declined to pursue the issue further. **See Commonwealth v. Dunkins**, 229 A.3d 622, 627 (Pa. Super. 2020) (statement of issues presented on appeal including challenges to the trial court's suppression ruling, the sufficiency of the evidence, and the weight of the evidence, but excluding any juror issues).

Our review discloses that it is uncontested that the juror in question did not make any complaints about deliberations until after the jury was discharged. **See**, **e.g.**, Br. in Support of Pet'r's Mot. to Unseal Documents, 12/29/22, at 1 (Dunkins' brief in support of his motion to unseal filed during the pendency of his first PCRA petition, in which Dunkins indicated the verdict was entered on September 5, 2018, and the juror corresponded with the court on September 6, 2018); **see also** Amended PCRA Pet., 12/22/22, at ¶¶ 4-5 (averring the same); **accord** Order, 1/9/23 (unnumbered at 1) (noting that court administration received a telephonic communication from the juror on September 6, 2018 regarding deliberations, evidence of which the trial court

sealed, and the court subsequently held an *in camera* conference on October 19, 2018, with Dunkins's counsel in attendance).

We conclude that the post-verdict communication by the juror about alleged strife during deliberations could not be grounds for impeaching the verdict because it concerned internal jury deliberations and occurred after the verdict was entered, *see Miller*, 212 A.3d at 1129 and *Williams*, 420 A.2d at 729; and, accordingly, appellate counsel cannot be ineffective for failing to raise a meritless claim. *See*, *e.g.*, *Commonwealth v. Rivera*, 199 A.3d 365, 384 (Pa. 2018 (appellate counsel cannot be ineffective for failing to raise a meritless issue). Additionally, as the PCRA court noted, Dunkins offered no evidence on this issue at his evidentiary hearing. Lastly, we note that at the conclusion of the trial, one of Dunkins's attorneys moved to poll the jury, which the trial court granted, and, thereafter, each member of the jury was asked whether they agreed with the verdict. Each of the twelve jurors gave their names on the record and stated that they agreed with the verdict. *See* N.T., 9/5/18, at 338-41. Therefore, we conclude Dunkins is due no relief, and this claim is frivolous. As such, we affirm the PCRA court's denial of relief and grant PCRA counsel's application to withdraw.

Order affirmed. Application to withdraw granted.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/8/2025